# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
On Remand from the Supreme Court, February 11, 2014

## STATE OF TENNESSEE v. CURTIS KELLER

**Criminal Court for Shelby County**
**No. 10-02756    Chris Craft, Judge**

---

**No. W2012-01457-CCA-R3-CD  -  Filed September 29, 2014**

---

The defendant, Curtis Keller, was convicted of three counts of aggravated robbery, three counts of especially aggravated kidnapping, four counts of attempted aggravated robbery, four counts of aggravated assault, one count of aggravated burglary, and one count of intentionally evading arrest in a motor vehicle.  For these convictions, he was given an effective sentence of three hundred years.  The defendant filed a direct appeal with this court raising multiple issues.  This court concluded that the defendant's claims lacked merit and affirmed the judgments of the trial court, including the convictions for especially aggravated kidnapping.  Thereafter, the defendant filed an application for permission to appeal with the Tennessee Supreme Court.  The application was granted in part, and the case was remanded to this court to be reconsidered in light of *State v. White*, 362 S.W.3d 559 (Tenn. 2012) and *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013).  Upon remand, we conclude that, contrary to the asserted argument, the *White* jury instruction was given to the jury.  Thus, we are limited to a simple sufficiency of the evidence review, the same review we conducted during the direct appeal.  Having already concluded that the evidence was sufficient, we again affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ.,, joined.

R. Todd Mosley, Memphis, Tennessee (on appeal); Mark Mesler, Memphis, Tennessee (at trial), for the appellant, Curtis Keller.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Procedural History

As noted, this case comes before this court on remand from the Tennessee Supreme Court for consideration of the sufficiency of the evidence with regard to the especially aggravated kidnapping convictions in light of *White* and *Cecil*. As such, we set forth only the facts relevant to those considerations. A more detailed recitation can be found in this court's original opinion. *State v. Curtis Keller*, No. W2012-01457-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 972, **2-32 (Tenn. Crim. App. Nov. 6, 2013), *perm. app granted*, (Tenn. Feb. 11, 2014).

The crimes for which the defendant stands convicted arose out of a home invasion robbery at the Chan home in Memphis. Although the defendant was not physically present at the home, he was the mastermind behind the planning and organization of the event. As such, he was convicted of the crimes under a theory of criminal responsibility.

On June 12, 2008, Mom Houon and Thourn Chan lived in a three story home, and Jeffrey Land, Sr. and his daughter, Claire Land, were living with them. Two of the Chan's children, Naree and Dara, were also home from college for the summer, as was Jeffrey Land, Jr. Mom Houon and Thourn Chan shared the master bedroom located on the first floor. The other occupants had their own rooms on the second or third floors of the home.

Around three o'clock in the morning, Mom Houson was awakened by the sound of glass breaking in the home. Thourn, her husband, went to the adjacent exercise room where he believed the sound had come from and was confronted by "a bunch" of masked men in dark colored clothing. The men aimed flashlights in his face and identified themselves as police officers. Mr. Chan was handcuffed and "dragged" back into the bedroom where his wife remained. Although the bedroom was dark, Mom Houson could see that several people, armed with guns, had entered the bedroom. The men handcuffed Mom Houson, pointed guns at the couple, and ordered them to lie face-down on the floor. Some of the men left the room to secure the other occupants of the home.

Dara Chan was awakened by the sound of heavy footsteps and banging doors. He heard someone yell "Germantown Police." He and his sister Naree Chan peered out the doors of their respective rooms to see what was wrong. Naree Chen was able to place a call

to 911. A large African-American man wearing a ski mask and gloves forced his way into Dara Chan's bedroom, pointed a gun at his head, and demanded to know where the money was. A second man entered the bedroom and began searching for valuables while the first man held him at gunpoint. After the search, the man grabbed Dara Chan by the back of the neck, aimed the gun at him, and dragged him down the stairs towards his parent's bedroom. As he went, he heard his sister Naree screaming inside her own bedroom. One of the men had seen Naree Chan on the phone and had taken her phone, throwing it on the floor. Dara Chan was handcuffed and ordered to lie on the floor in his parents bedroom.

Jeffery Land, Jr. was also awakened by someone pulling his arms and forcibly removing him from the bed. Initially, he was able to put the man in a headlock, but another man entered the room, subdued him, and placed him in handcuffs. These men also identified themselves as "Germantown Police." The men pointed a gun at Jeffrey Land, Jr.'s head, and he informed the men his wallet was inside the dresser. After the men retrieved his wallet, he was then forced out of his bedroom and taken down the stairs to the master bedroom with the others where they all remained at gunpoint until the intruders left.

Jeffrey Land, Sr. was awakened by men shining a light in his face and identifying themselves as "FBI." While lying in his bed, he was handcuffed with his hands in front of him. Thereafter, he was jerked from the bed and taken to the master bedroom at gunpoint. Jeffrey Land, Sr. heard his daughter, Claire Land, crying, and he heard someone yell at her to shut up or that he would kill her. She, as were all the other occupants of the house, was handcuffed and placed on the floor in the master bedroom at gunpoint.

The intruders repeatedly asked Thourn Chan, the owner of three jewelry and pawn shops, the location of the safe and the jewelry. He begged the men not to harm his family and offered to take them to the jewelry store. The intruders slammed him to the floor. Upon learning from him that there was not a safe in the home, the intruders ransacked the other rooms of the home and took $5,000 from Mom Houon's purse which was located in the hallway. They also took Thourn Chan's Cartier watch and $1,500 from a chest of drawers in the bedroom. During this time period, the intruders kept urging each other to hurry because the police were coming. The men departed the home, leaving the victims handcuffed in the bedroom. The entire incident lasted approximately ten minutes, and the police arrived soon after the intruders departed.

Thereafter, a multiple count indictment was returned against the defendant and seven others. The indictment charged as follows:

| Count | Offense | Victim |
| --- | --- | --- |

| 1 | Aggravated Robbery | Thourn Chan |
|---|---|---|
| 2 | Aggravated Robbery | Mom Houon |
| 3 | Aggravated Robbery | Jeffrey Land, Jr. |
| 4 | Especially Aggravated Kidnapping | Jeffrey Land, Jr. |
| 5 | Especially Aggravated Kidnapping | Jeffrey Land, Sr. |
| 6 | Especially Aggravated Kidnapping | Claire Land |
| 7 | Attempted Aggravated Robbery | Naree Chan |
| 8 | Attempted Aggravated Robbery | Claire Land |
| 9 | Attempted Aggravated Robbery | Jeffrey Land, Sr. |
| 10 | Attempted Aggravated Robbery | Dara Chen |
| 11 | Aggravated Assault | Thourn Chan |
| 12 | Aggravated Assault | Dara Chen |
| 13 | Aggravated Assault | Naree Chan |
| 14 | Aggravated Assault | Claire Land |
| 15 | Aggravated Burglary | Thourn Chan |
| 16 | Intentionally Evading Arrest in a Motor Vehicle | |
| 17 | Theft of Property over $500 | Sunrise Pontiac |

Following a jury trial, the defendant was convicted of all of the above listed offenses with the exception of theft of property. Following a sentencing hearing, the trial court imposed an effective three hundred year sentence to be served in the Department of Correction. After the denial of the motion for new trial, the defendant filed a timely notice of appeal with this court raising three issues for review: (1) whether the evidence was sufficient to support his convictions; (2) whether his convictions should be reversed because the State failed to establish the chain of custody of a ski mask; and (3) whether the trial court erred by failing to declare a mistrial after a witness made a general remark as to the effect

that the defendant has engaged in wrongful behavior in the past. Finding no merit to the defendant's claims, this court affirmed the convictions and sentences.

Next, the defendant filed an application for permission to appeal to the Tennessee Supreme Court. The defendant asserted that the reason that the application should be granted was to give the court "a chance to address a first impression argument of whether a defendant can be found guilty of especially aggravated kidnapping by way of criminal responsibility if the intent to commit the accompanying felony was the only intent." He further asked the court to consider the argument in the context of *State v. White* and to find that the *White* instruction should have been given and that the error of failing to charge the jury was not harmless because "the proof could be interpreted in different ways." The defendant also raised other questions for review, but our supreme court granted the application only "for the purpose of remanding the case to the Court of Criminal Appeals for reconsideration in light of *State v. White*, 362 S.W.3d 559 (Tenn. 2012) and *State v. Cecil*, 409 S.W.3d 599 (Tenn. 2013)."

**Analysis**

For years, possible violations of due process with regard to kidnapping and false imprisonment crimes were governed by *State v. Anthony*, 817 S.W.2d 299, 300 (Tenn. 1991) and *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). Under *Anthony*, the test to be applied on appellate review was: "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Anthony*, 817 S.W.2d at 306. The standard was amended to a two part test by the *Dixon* court, that being: (1) whether the defendant's movement or confinement of the victim was beyond that necessary to consummate the accompanying felony, and, if so; (2) whether the additional movement or confinement prevented the victim from summoning assistance, lessened the defendant's risk of detection, or created a significant danger or increased the victim's risk of harm. *Dixon*, 957 S.W.2d at 535. In *State v. Richardson*, 251 S.W.3d 438, 443 (Tenn. 2008), our supreme court recognized that the test set forth in *Dixon* replaced the *Anthony* test.

However, in 2012, the Tennessee Supreme Court explicitly overruled *Anthony* and its progeny, including *Dixon* and *Richardson*. *White*, 362 S.W.3d at 578. The court, in analyzing whether the defendant's dual convictions for aggravated robbery and especially aggravated kidnapping could stand, rejected *Anthony*'s reliance on an appellate court's due process scrutiny of kidnapping convictions imposed in conjunction with convictions of an accompanying felony. *Id*. at 577-78. Rather, the court shifted the appellate analysis to a standard sufficiency of the evidence review of a *properly instructed* jury's assessment of the

facts. *Id*. The court further emphasized that it was the *jury's* "primary obligation . . . to ensure that a criminal defendant has been afforded due process." *Id*. at 577. The court, in order to ensure that the jury can carry out its function, delineated a jury instruction to be given:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> > • the nature and duration of *the victim's* removal or confinement by the defendant;
> > • whether the removal or confinement occurred during the commission of the separate offense;
> > • whether the interference with *the victim's* liberty was inherent in the nature of the separate offense;
> > • whether the removal or confinement prevented *the victim* from summoning assistance, although the defendant need not have succeeded in preventing *the victim* from doing so;
> > • whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
> > • whether the removal or confinement created a significant danger or increased *the victim's* risk of harm independent of that posed by the separate offense.

*Id*. at 580-581 (footnote omitted) (emphases added). In *Cecil*, our supreme court made clear that *White* applied to cases then in the appellate "pipeline." *Cecil*, 409 S.W.3d at 608. The defendant was convicted on May 8, 2012, approximately two months after the *White* decision was filed. Clearly, the decision was applicable in his case.[1]

---

[1]At this juncture, we note that we are not forced to engage in a determination of whether the *White* instruction was required even if the victims were not named in another accompanying felony, as all three of the kidnapping victims in this case were in fact named in separate felonies. Thus, we are not called to weigh in again on an issue which has various panels of this court in conflict. *See State v. Gary S. Holman*, No. E2012-01143-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 65 (Tenn. Crim. App Jan. 27, 2014); *State v. Ricco Williams*, W2011- 02365-CCA-RM-CD, 2014 Tenn. Crim. App. LEXIS 11 (Tenn. Crim. App. Jan.

(continued...)

The *White* case also instructs that this instructional deficit, if the instruction is not given, is a constitutional error. *Id*. at 610. Such a non-structural constitutional error mandates reversal unless the State demonstrates beyond a reasonable doubt that the error was harmless. *Id*. (citing *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008)). "[T]he touchstone of this inquiry is whether a rational trier of fact could interpret the proof at trial in different ways." *Id*. (citing *White*, 362 S.W.3d at 579). If the proof could be interpreted in a manner that would not support a defendant's kidnapping conviction, then the defendant is entitled to a new trial. *Id*. at 611-12.

While we do acknowledge that the instruction was applicable in this case and further that on direct appeal, the issue was not raised by either party and we failed to specifically address the issue, our analysis will not change on remand. Contrary to the assertions made, the *White* instruction was given to the jury according to the record before us. The following is contained within the jury instructions submitted to the jury in this case:

**Especially Aggravated Kidnapping**

Any person who commits an Especially Aggravated Kidnapping is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1)  that the defendant knowingly removed or confined the alleged victim in that particular count unlawfully so as to interfere substantially with the other's liberty; and

(2)  that the confinement or removal was accomplished with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it was a deadly weapon.

---

[1](...continued)
7, 2014); *State v. Jerome Maurice Teats*, M2012-01232-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 18 (Tenn. Crim. App. Jan. 10, 2014); *State v. Gregory Mathis and Eliza Evans*, M2011-01096-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 757 (Tenn. Crim. App. Sept. 5, 2013); *but see State v. Josh L. Bowman*, No. E2012-00923-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 735, *44 (Tenn. Crim. App. Aug. 29, 2013); *Teats*, 2014 Tenn. Crim. App. LEXIS, at *90; and *Williams*, 2014 Tenn. Crim. App. LEXIS 11, at *34.

A removal or confinement is "unlawful" if it is accomplished by force or threat. Although the law requires no specific period of time of confinement or distance of removal, a removal or confinement "interferes substantially" with another's liberty if the time of confinement is significant or the distance of removal is considerable.

To find the defendant guilty of this offense, you must also find beyond a reasonable doubt that the removal or confinement was to a greater degree than that necessary to commit the offenses of Aggravated Robbery, Criminal Attempt: Aggravated Robbery or Aggravated Assault, or any of their lesser included offenses as charged or included in counts 1 through 3 and 7 through 15 of this indictment. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

(a)    the nature and duration of the alleged victim's removal or confinement by the defendant;

(b)    whether the removal or confinement occurred during the commission of the separate offense;

(c)    whether the interference with the alleged victim's liberty was inherent in the nature of the separate offense;

(d)    whether the removal or confinement prevented the alleged victim from summoning assistance, although the defendant need not have succeeded in preventing the alleged victim from doing so;

(e)    whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

(f)    whether the removal or confinement created a significant danger or increased the alleged victim's risk of harm independent of that posed by the separate offense.

Unless you find beyond a reasonable doubt that the alleged victim's removal or confinement exceeded that which was necessary to accomplish the alleged other offenses listed above and was not essentially incidental to them, you must find the defendant not guilty of Especially Aggravated Kidnapping, as well as not guilty of the lesser included offenses of Aggravated Kidnapping, Kidnapping, and False Imprisonment.

"Force" means compulsion by the use of physical power or violence.

"Deadly weapon," "Violence," "Knowingly" and "Intentionally" have been previously defined in these instructions.

While not a verbatim recitation of the language used in the suggested instruction in *White*, it would belie logic to conclude that the above did not instruct the jury in accordance with the principles of the *White* case. It explicitly references the very things the *White* case is based upon. Thus, we must conclude that the jury was properly instructed in this regard.

As previously noted, it is now the jury's obligation to ensure that a criminal defendant has been afford due process in these types of cases. *White*, 362 S.W.3d at 577. Our appellate review now shifts to a standard sufficiency of the evidence review of a properly instructed jury's assessment of the facts. *Id*. at 577-78.

"Findings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). During appellate review, the State must be afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the State. *See id*. The jury, not a reviewing court, is responsible for assessing the credibility of the witnesses, deciding what weight to accord their testimony, and reconciling any conflicts in the proof; a reviewing court may not re-weigh the evidence or draw different inferences from that evidence than those drawn by the jury. *See id*.

Only the defendant's three convictions for especially aggravated kidnapping are relevant to our review on remand. Again, "[e]specially aggravated kidnapping is false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-305 (a)(1) (2010). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a).

Pursuant to sufficiency review, as we did in the original appeal, we conclude that the

evidence is sufficient to support the jury's findings that the defendant was criminally responsibile for the acts of the home invaders, including those acts which established the especially aggravated kidnapping of Jeffery Land, Sr., Jeffery Land, Jr., and Claire Land. Mr. Thourn Chan and Ms. Mom Houon both testified that the three victims were taken at gunpoint from their respective rooms in the upstairs of the Chan residence and then forced to lay down on the floor downstairs. Ms. Houon specifically testified that each of the residents had a gun pointed at them when they were brought downstairs. Mr. Jeffery Land, Sr. testified that he was awoken by a man shining a flashlight in his face before the man handcuffed Mr. Land and "jerked [him] out of bed," "marched [him] downstairs," and "forced [him] down, face down onto the floor." He further testified that a short time later he heard his daughter crying and heard someone yell, "shut up or I'll kill you," before other intruders brought her and laid her face down on the floor. Jeffrey Land, Jr. testified that on the night of the incident he was forced out of bed, handcuffed, and had a gun pointed at his head before "they forced [him] out of the bedroom." He further testified that he saw one of the intruders bring his sister downstairs and lay her down on the floor.

From this testimony, a reasonable jury could conclude that the home invaders knowingly removed and confined all three individuals and did so by using deadly weapons. Moreover, the jury could have reasonably concluded that the removal or confinement was to a greater degree than that necessary to commit the other offenses against the victims. As such, we conclude that the evidence is sufficient to support the three convictions for especially aggravated kidnapping and affirm.

As an aside, we would note that, had the *White* instruction not been given, we would likely have still affirmed the convictions, just as this court did in a separate home invasion robbery case in which the defendant was involved and convicted without the *White*, instruction being charged. *State v. Curtis Keller*, No. W2012-00825-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 558 (Tenn. Crim. App. Jun. 27, 2013), *perm. app. denied*, (Tenn. Dec. 10, 2013). In that case, this court concluded that while it was error not to charge the jury, any error which resulted was harmless. *Id*. at *11. The facts of the case are quiet similar to those at issue before us. It involved breaking into a home occupied by parents and children and moving those victims around at gunpoint and threatening violence. *Id*. at *4-6. This court concluded that the evidence presented by the State fully established that the victim's kidnapping were separate from - not "incidental" to - the commission of the aggravated assaults upon the victims. The court found that the interference with the victim's liberty that occurred was not part and parcel of the assaults. "Rather, the record reflects that after the victims had been subjected to threats and deadly force, they were further removed and confined with the intention that they be used as hostages in support of the defendant's efforts to rob Andrew Morrow." We see no reason that the same conclusion would not have been reached upon the facts before us in this case had the review been necessary.

**CONCLUSION**

After review of the record on remand from the Tennessee Supreme Court, we conclude that the jury was properly charged pursuant to *State v. White* and that the evidence is sufficient to support the convictions for especially aggravated kidnapping. As such, we affirm.

_____

JOHN EVERETT WILLIAMS, JUDGE